**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO.     18-51319 (JAM) |
| JAMES E. MCCANN, ) | |
|     Debtor. ) | CHAPTER     7 |
| ) | |
| ) | |
| OPTIONS UNLIMITED, INC., ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ADV. PRO. NO.   19-05012 (JAM) |
| JAMES E. MCCANN, ) | |
|     Defendant. ) | ECF NO.     26 |
| ) | |

**APPEARANCES**

Aaron Romney                                                                                   *Attorneys for the Plaintiff*
John L. Cesaroni
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604

Peter L. Lawrence                                                                               *Attorney for the Defendant*
Lawrence & Jurkiewicz, LLC
60 East Main Street
Avon, Connecticut 06001

**MEMORANDUM OF DECISION AND ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT**

Julie A. Manning, Chief United States Bankruptcy Judge

**I.     INTRODUCTION**

On October 12, 2018, James E. McCann (the "Defendant") filed a voluntary Chapter 7

petition. On May 16, 2019, Options Unlimited, Inc. (the "Plaintiff") commenced this adversary

proceeding against the Defendant seeking a determination that the debt owed to the Plaintiff by

the Defendant is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6). On January 12, 2021, the Plaintiff filed a Motion for Summary Judgment (the "Motion for Summary Judgment," ECF No. 26). The deadline to oppose the Motion for Summary Judgment passed without the Defendant filing a response. For the reasons that follow, the Motion for Summary Judgment is granted.

## II.     JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding pursuant to 28 U.S.C. § 1334(b). The Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

## III.    UNDISPUTED FACTS

Local Rule 56 of the United States District Court for the District of Connecticut requires that a party moving for summary judgment file a Local Rule 56(a)(1) Statement of Undisputed Material Facts. *See* D. Conn. L. R. 56(a)(1). A party opposing a motion for summary judgment must file a Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment. *See* D. Conn. L. R. 56(a)(2). Each material fact set forth in a movant's Statement of Undisputed Material Facts and supported by the evidence "will be deemed to be admitted (solely for the purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule." *See* D. Conn. L. R. 56(a)(1); *see also Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 746-747 (Bankr. D. Conn. 2014). Here, the Plaintiff filed its Local Rule 56(a)(1) Statement (the "Plaintiff's Rule 56(a)(1) Statement"). However, the Defendant did not file a response to the

Motion for Summary Judgment or a Local Rule 56(a)(2) Statement. Therefore, the material facts set forth in the Plaintiff's Rule 56(a)(1) Statement are deemed admitted.

The Court finds the following undisputed material facts:[1]

1. The Plaintiff is a non-profit Connecticut corporation founded by the Defendant in 1994 to provide residential support services to individuals with intellectual and/or developmental disabilities. Ex. A. at 3.

2. The Defendant served as the Plaintiff's president and chief executive officer (CEO) from 1994 through July 2006. The Defendant also served as the Plaintiff's "de facto" president and CEO from July 2006 through June 2010. The Defendant was responsible for managing the Plaintiff's business and financial affairs. *Id.*

3. On May 24, 2006, while still working for the Plaintiff, the Defendant incorporated Residential Support Services, Inc. ("RSS"), a for profit corporation. The Defendant simultaneously served as president and CEO of the Plaintiff and RSS. In addition, the Defendant's wife served as vice-president of RSS while simultaneously employed as the Plaintiff's director of administration and development. *Id.* at 3.

4. While the Defendant was serving as de facto president and CEO of the Plaintiff, the Plaintiff entered into four "management/consulting" agreements with RSS which entitled the Defendant to annual compensation of $300,000 per year under the first agreement, $300,000 per year under the second agreement, $97,500 per year under the third agreement, and $87,500 per year under the fourth agreement. *See id.* at 6, 9, 11, 13. The management/consulting agreements provided that RSS would be acting in a fiduciary capacity to the Plaintiff. *Id.* at 6, 9.

---

[1] All facts are derived from the Plaintiffs' Rule 56(a)(1) Statement and a Memorandum of Decision of the Connecticut Superior Court dated August 17, 2020 (the "Judgment") attached as Exhibit A to the Plaintiffs' Rule 56(a)(1) Statement.

5. During all relevant times, the Plaintiff's operating income came through funding from the Connecticut Department of Social Services ("DSS") and Department of Developmental Services ("DDS"). *Id.* at 4. Connecticut law capped the Defendant's salary at $75,000 through 2006 and at $100,000 through 2010. *Id.* Connecticut law allowed the Defendant to receive a higher salary from the Plaintiff if the Plaintiff paid him using revenue streams from sources other than DSS and DDS. *Id.*

6. In 2012, DDS began a review of the second management/consulting agreement and related payments to RSS for the fiscal year 2011. *Id.* at 18.

7. On February 25, 2013, DDS completed its review of the second management/consulting agreement between the Plaintiff and the Defendant and determined that the July 1, 2010 contract with RSS was a "related party transaction." *Id.* at 19. The classification of a transaction as a "related party transaction" is significant because a related party transaction requires ethical preapproval from DDS' Ethics Committee. *See id.* at 16-18. DDS regulations and the Plaintiff's bylaws also require at least two other comparing bids to approve related party transactions. *Id.* at 17.

8. DDS found the transaction between the Plaintiff and RSS was a "related party transaction" based on the Defendant's potential or ability to exercise influence or control over the parties, that [the] Plaintiff had failed to obtain DDS approval for it, and that the $75 hourly rate in the contract for RSS' services was too high "as many of these duties would not necessitate the administrative skill set required of a typical Executive Director's position, for [RSS]." *Id.* at 19.

9. On August 13, 2014, DDS notified the Plaintiff that RSS had overbilled the Plaintiff for 1083 hours. DDS found that of the 1300 hours billed by RSS, only 217 hours were

accounted for. Thereafter, DDS disallowed 1083 hours billed, totaling $81,225, as being undocumented and attempted to recoup those funds from the Plaintiff. *Id.* at 19-20.

10. On August 14, 2014, the Plaintiff filed a nine-count complaint in the Connecticut Superior Court against the Defendant and other defendants alleging the Defendant committed fraud, breach of fiduciary duty, breach of contract, misrepresentation, and negligence (the "State Court Action"). *See Options Unlimited, Inc. v. James E McCann et al*, Doc. No. LLI-CV-14-6011051-S and *Residential Support Services, Inc. v. Options Unlimited, Inc.*, Doc. No. LLI-CV-15-6012963-S.

11. A trial was held in the State Court Action over eight days during which the Plaintiff and the Defendant appeared, testified, presented lay witnesses, expert testimony, and submitted 147 documents into evidence. Ex. A at 3.

12. By Memorandum of Decision dated August 17, 2020, a Judgment entered in the State Court Action in favor of the Plaintiff against the Defendant in the amount of $1,055,540.15. *Id.* at 53.

13. The Judgment held the Defendant liable for common law fraud, finding he "knowingly misrepresented the work that he and his wife completed for the Plaintiff by overbilling it and also misrepresented their allowable compensation." *Id.* at 30. The Judgment also held the Defendant liable for breach of fiduciary duty to the Plaintiff both personally while the Defendant was the Plaintiff's president and CEO, and contractually while the Defendant was the president and CEO of RSS. *Id.* at 34.

14. The Judgment found that:

    (i) The Defendant's misrepresentations were intentional to circumvent the

5

state-imposed salary limitations and the Defendant himself had acknowledged that he had overbilled the Plaintiff. *Id.*

(ii) The Defendant's testimony that he tried to accurately bill the Plaintiff was not credible. *Id.*

(iii) The testimony of the Defendant, the Plaintiff's lay witnesses, and the Plaintiff's expert witness established that the monthly 100 to 115 hours of work the Defendant claimed to perform should have taken only approximately twenty hours each month to complete and could have been completed by the Plaintiff's personnel at a far lesser rate of pay. *Id.*

(iv) The Defendant knowingly misrepresented the work he completed for the Plaintiff personally and as an officer of RSS. *Id.*

(v) The Defendant's misrepresentations were made to induce the Plaintiff to pay the Defendant his requested sums, which the Plaintiff did pay to the Defendant. *Id.*

(vi) The Plaintiff established by a preponderance of the evidence that the Defendant had breached his fiduciary duty. *Id.*

(vii) Knowing that the Plaintiff's Board relied on his expertise, experience, and knowledge in the field of operating a non-profit agency, the Defendant pursued contracts through the Plaintiff that benefitted both himself and his wife individually at the Plaintiff's expense. *Id.*

(viii) The Defendant knowingly submitted materially false billing statements to the Plaintiff and allowed the approval of the materially false billing statements while still acting as the actual or "de facto" president and CEO of the Plaintiff. *Id.*

IV.  **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(a) is made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056.  Rule 56 directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "Upon consideration of a motion for summary judgment, 'the judge's function . . . is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Delaney*, 504 B.R. at 746 (quoting *Anderson*, 477 U.S. at 249).  "[T]he court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Mex. Constr. & Paving v. Thompson (In re Thompson)*, 511 B.R. 20, 24 (Bankr. D. Conn. 2014) (quoting *Flaherty v. Lang*, 199 F.3d 607, 615 (2d Cir. 1999)).

At the summary judgment stage, the moving party must show there are no genuine issues of material fact, and the court must consider all facts in the light most favorable to the non-moving party.  *Conn. Ironworkers Emp'rs Ass'n v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98-99 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1547 (2018) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456, (1992) and *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015)).  Once the moving party has met its burden, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  *Official Comm. of Unsecured Creditors of Affinity Health Care Mgmt., Inc. v. Wellner*

*(In re Affinity Health Care Mgmt., Inc.)*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

V.  **DISCUSSION**

    A.  **The Doctrine of Collateral Estoppel**

Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158 (1984); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006). It is well-established that the doctrine of collateral estoppel applies in bankruptcy proceedings, and that the doctrine may be used to establish the non-dischargeability of a debt. *In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019) (citing *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) and *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

When determining whether a state court judgment has preclusive effect, the court must apply the preclusive law of the rendering state. *See Thompson*, 511 B.R. at 26. Under Connecticut law, "collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment." *Cumberland Farms, Inc. v. Town of Groton*, 262 Conn. 45, 58 (2002). To be subject to collateral estoppel, an issue must have been (1) "fully and fairly litigated," (2) "actually decided," (3) "necessary to the judgment" in the first action, and (4) "identical" to the issue to be decided in the second action. *See Faraday*, 596 F. Supp. 2d 508, 515 (2009) (citing *State v. Joyner*, 255 Conn. 477, 490 (2001) and *Lighthouse Landings, Inc. v. Conn. Light &*

8

*Power Co.*, 300 Conn. 325, 343 (2011)). Re-litigation of an issue "will be barred where 'the issues presented by this litigation are in substance the same as those resolved' in the prior case." *Montana v. United States*, 440 U.S. 147, 155 (1979); *see also Guo Zhong Wu v. Qiao Lin (In re Qiao Lin)*, 576 B.R. 32, 59 (Bankr. E.D.N.Y 2017). The party seeking to utilize the doctrine of collateral estoppel bears the burden of proving the elements necessary for its application. *Automated Salvage Transp. Co. v. Swirsky (In re Swirsky)*, 372 B.R. 551, 562 (Bankr. D. Conn. 2006).

### B. The Preclusive Effect of the Judgment

The Plaintiff argues that the Judgment is entitled to preclusive effect under the doctrine of collateral estoppel and summary judgment should enter in its favor on all three counts of the Complaint. The Court agrees.

#### 1. Count One: false pretenses, false representation, or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A).

To prevail on a section 523(a)(2)(A) claim, a plaintiff must establish five elements: (1) the defendant made a false representation; (2) at the time the representation was made, the defendant knew it was false; (3) the defendant made the representation with intent to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff sustained loss or damage as a proximate consequence of the false representation. *See In re Deutsch*, 575 B.R. 590, 599 (Bankr. S.D.N.Y. 2017). For the purposes of section 523(a)(2)(A), "a false representation means that '(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant.'" *Id.* (quoting *Frishberg v. Janac (In re Janac)*, 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009)).

The Judgment found that the Defendant was liable for common law fraud. Under Connecticut law, a plaintiff must prove the following common law fraud elements: (1) the

defendant made a misrepresentation of fact; (2) the defendant knew or should have known that the statement was false; (3) the misrepresentation was made to induce the plaintiff to act upon it; (4) the plaintiff reasonably relied on the misrepresentation; and (5) the plaintiff suffered pecuniary harm as a result. *In re Parrella*, 622 B.R. 559, 566-67 (Bankr. D. Conn. 2020); *Thompson*, 511 B.R. at 26-27; *Suffield Development Associates, Ltd. Partnership v. National Loan Investors, L.P.*, 260 Conn. 766, 777, 802 A.2d 44 (Conn. 2002). The elements of nondischargeability under section 523(a)(2)(A) "are essentially the same as the elements of fraud under Connecticut law." *See In re Bugnacki*, 439 B.R. 12, 25 (Bankr. D. Conn. 2010).

"[A]t common law, fraudulent misrepresentation and intentional misrepresentation are the same tort." *Kramer v. Petisi,* 285 Conn. 674, 684 n. 9, 940 A.2d 800 (Conn. 2008). As to fraud in the inducement, generally, any allegation of fraud must be proven by clear and convincing evidence. *FDIC v. Roberti (In re Roberti)*, 201 B.R. 614, 621 (Bankr. D. Conn. 1996); *Kavarco v. T.J.E. Inc.*, 2 Conn. App. 294, 296, 478 A.2d 257 (Conn. App. 1984), *overruled on other grounds by Kaczynski v. Kaczynski*, 294 Conn. 121, 981 A.2d 1068 (Conn. 2009). Where "a state court's determination of fraud—involving elements congruent with fraud under bankruptcy law—is established by a stricter standard, the considerations in favor of applying collateral estoppel are greatly enhanced." *See Evans*, 469 F.3d at 283 (citing *Grogan,* 498 U.S. at 284-85).

The elements of a section 523(a)(2)(A) claim were fully and fairly litigated in the State Court Action. The Defendant, who was represented by counsel, appeared and defended against the claims at trial and at the post-trial hearing on attorney's fees and punitive damages. The Defendant declined to seek appellate review of the Judgment and therefore the Judgment became a final judgment.

Further, the elements of a section 523(a)(2)(A) claim were actually decided in the State Court Action and were necessary to the Judgment. The Superior Court applied the elements of Connecticut common law fraud to the facts after a full trial and determined that the Defendant was liable for common law fraud in the amount of $1,055,540.15. Local Rule 56(a)(1) Statement at ¶12-13. The Court found that: (i) the Defendant knowingly misrepresented the services he and his wife performed by overbilling the Plaintiff for duties that an administrative assistant could have completed each month in twenty hours; (ii) the Defendant also misrepresented the compensation he could receive under state law; (iii) the Defendant's intent in making these misrepresentations was to circumvent the state-imposed salary cap; and (iv) the Defendant made such representations to induce the Plaintiff to pay him the sums he requested, which the Plaintiff did. *Id.* at ¶14(i)-(v), (vii), and (viii). As such, the Judgment actually and necessarily decided that the Defendant's actions satisfied the elements of common law fraud.

Because the Judgment determining the common law fraud claim resolved all issues necessary to prove a section 523(a)(2)(A) claim, collateral estoppel applies. The Plaintiff is therefore entitled to summary judgment on Count One of the Complaint.

### 2. Count Two: fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny pursuant to 11 U.S.C. § 523(a)(4).

To prevail on a claim under section 523(a)(4), a plaintiff must establish two elements: "(i) the existence of a fiduciary relationship between the [p]laintiff and the [d]efendant; and (ii) a [fraud or] defalcation committed by the [d]efendant in the course of that relationship." *In re Fritzson*, 590 B.R. 178, 192 (Bankr. D. Conn. 2018) (quoting *Beaulieu v. Fox (In re Fox)*, 2017 WL 564499, at *3 (Bankr. D. Conn. Feb. 10, 2017); *Mirarchi v. Nofer (In re Nofer)*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014)).

As to the first element of a section 523(a)(4) claim, the Bankruptcy Code does not define "fiduciary relationship." *See In re Fritzson*, 590 B.R. at 192. While the definition of fiduciary for the purposes of section 523(a)(4) is generally a matter of federal law, *In re Gucciardo*, 577 B.R. 23, 33 (Bankr. E.D.N.Y. 2017), "its application frequently turns upon obligations attendant to relationships governed by state law," *In re Hayes*, 183 F.3d 162, 166 (2d Cir. 1999).

A fiduciary relationship under Connecticut law "is a relationship that is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 429 (2d Cir. 1999). "In the seminal cases in which [the Connecticut Supreme Court] has recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another." *In re Hall*, 483 B.R. 281, 292 (Bankr. D. Conn. 2012) (citing *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 38, 761 A.2d 1268 (2000)).

The Judgment fully and fairly litigated the questions of whether a fiduciary relationship existed between the Plaintiff and the Defendant and whether the Defendant committed fraud or defalcation in the course of that relationship. *See* Local Rule 56(a)(1) Statement at ¶¶13, 14(vi), (vii), and (viii). The Judgment both actually and necessarily decided that the Defendant owed the Plaintiff a fiduciary duty personally as president and CEO of the Plaintiff, and contractually pursuant to the first, second, third, and fourth management/consulting agreements with RSS. *Id.* As such, collateral estoppel applies because the Judgment established there was a fiduciary

relationship between the Plaintiff and the Defendant and also established the Defendant was liable for breach of fiduciary duty.[2]

Because the Judgment actually and necessarily found the Defendant personally and contractually owed the Plaintiff a fiduciary duty while he engaged in fraudulent overbilling in relation to his official duties and that he breached his fiduciary duty, the Defendant committed "fraud … while acting in a fiduciary capacity." *See id.* at ¶¶13, 14. As such, collateral estoppel applies, and the Plaintiff is entitled to summary judgment on Count Two of the Complaint.

### 3. Count Three: willful and malicious injury by the debtor to another entity pursuant to 11 U.S.C. § 523(a)(6).

To succeed on a section 523(a)(6) claim, a plaintiff must prove: (1) the debtor acted willfully; (2) the debtor acted maliciously; and (3) the "debtor's willful and malicious actions caused injury to the plaintiff or the plaintiff's property." *Salvatore v. Salvatore (In re Salvatore)*, 586 B.R. 371, 377 (Bankr. D. Conn. 2018) (citing *In re Powell*, 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017)). "For a debt to be non-dischargeable as a willful and malicious injury, it must arise from an intentional tort which is specifically intended to injure the plaintiff." *In re Swirsky*, 372 B.R. 551, 563 (Bankr. D. Conn. 2006) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). "Bankruptcy Code § 523(a)(6) is limited to intentional torts and does not except negligent or reckless torts." *Id.* "Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" *Id.*; *see also In re Mucci*, 458 B.R. 802, 810 (Bankr. D. Conn. 2011); 4 *Collier on Bankruptcy* ¶ 523.12[1] (16th ed. 2021) ("Section 523(a)(6) generally relates to torts and not to contracts.").

---

[2] The Court does not need to consider whether the Defendant's conduct satisfies the definition of "defalcation" because the Defendant's fraud has already been actually and necessarily established in connection with section 523(a)(2)(A).

While neither "willful" nor "malicious" conduct is defined by the Bankruptcy Code, the United States Supreme Court has clarified that section 523(a)(6) requires "a deliberate and intentional injury, not merely a deliberate or intentional act that leads to injury." *Geiger*, 523 U.S. at 61-62; *see also Salvatore*, 586 B.R. at 377. It renders non-dischargeable "only acts done with *actual intent to cause injury*," not merely "acts, done intentionally, that cause injury." *Geiger*, 523 U.S. at 61; *see also Hamrah v. Couloute (In re Couloute)*, 538 B.R. 184, 190 (Bankr. D. Conn. 2015). In other words, "[t]o be 'willful,' the injury must arise from an intentional tort which is specifically intended to injure the plaintiff." *In re Mucci*, 458 B.R. at 810; *In re Wisell*, 494 B.R. 23, 41 (Bankr. E.D.N.Y. 2011) (citations omitted) ("This [willfulness] standard is akin to an intentional tort which requires that the actor 'intend the consequences of an act, not simply the act itself.'"). "Actions which are negligent or reckless, do not satisfy the Section 523(a)(6) 'willful' standard." *Wisell*, 494 B.R. at 41.

The United States Court of Appeals for the Second Circuit has defined malicious to mean "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87-88 (2d Cir. 1996); *see also 3N Int'l, Inc. v. Carrano (In re Carrano)*, 530 B.R. 540, 559 (Bankr. D. Conn 2015). Malice may be implied where "anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Thompson*, 511 B.R. at 32 (quoting *Delaney*, 504 B.R. at 749). Because a willful and malicious injury must arise from an intentional tort, a knowing violation of the creditor's legal rights such as a knowing breach of contract is insufficient to establish malice absent additional aggravating circumstances. *Newman*, 588 B.R. at 298 (citing *In re Marcella*, 463 B.R. 212, 222-23 (Bankr. S.D.N.Y. 2011)). Where a debtor seeks profit or some

14

other benefit, "the underlying conduct, however deplorable, would not give rise to liability under Section 523(a)(6) in the absence of some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice under the Second Circuit decision in [*Stelluti*]." *Carrano*, 530 B.R. at 559 (quoting *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998)).

    The issue of the Defendant's intent to commit common law fraud was fully and fairly litigated. *See* Local Rule 56(a)(1) Statement at ¶14(i). The Superior Court concluded that the Defendant knowingly misrepresented to the Plaintiff the work he and his wife performed by overbilling the Plaintiff and also concluded that the Defendant knowingly misrepresented their maximum allowable compensation. *Id.* at ¶14(i) and (iv). The Defendant's purposeful misrepresentations were made to induce the Plaintiff to overpay him and were made with the intention that the Plaintiff overcompensate him. *Id.* at ¶14(v). As such, collateral estoppel applies to the "willfulness" intent element of section 523(a)(6).

    The Judgment also actually and necessarily found the Defendant's injury to the Plaintiff was malicious. The intentional tort of fraud involves the inherently wrongful act of deception and so is malicious. *See Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 882, 136 S.Ct. 1581, 1586-1588 (2016) (discussing the history of the cause of action of "actual fraud"); *see also* 4 *Collier on Bankruptcy* ¶ 523.12[1] (16th ed. 2021) ("Conduct that may give rise to a non-dischargeable debt under section 523(a)(6) may also be nondischargeable under other sections of section 523(a). For example, debts procured by fraud may be nondischargeable under section 523(a)(6) as arising from conduct causing willful and malicious injury to an entity or property of an entity."). The Superior Court found that the Defendant knowingly acted with fraudulent intent to induce the Plaintiff to overpay him and his wife. Local Rule 56(a)(1)

Statement at ¶14(i), (iv), and (v).

Furthermore, the Judgment actually and necessarily decided the Defendant's conduct was fraudulent and therefore willful and malicious, and the Judgment could not have been rendered without this finding. The Judgment found that the Defendant's willful and malicious actions injured the Plaintiff by causing the Plaintiff to over-compensate the Defendant through RSS in the amount of $1,055,540.15. *Id.* at ¶12. Therefore, the willful and malicious injury issue was actually and necessarily decided for collateral estoppel purposes.

The Judgment establishes that there are no genuine issues of material fact as to the debt awarded to the Plaintiff. The Judgment is entitled to preclusive effect as to Count Three of the Complaint.

## VI. CONCLUSION

For the reasons set forth above, the Plaintiff is entitled to a determination as a matter of law that the debt owed to it by the Defendant is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

Accordingly, it is hereby

**ORDERED:** The Motion for Summary Judgment is GRANTED; and it is further

**ORDERED:** A separate judgment shall enter deeming the debt owed to the Plaintiff by the Defendant non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

Dated at Bridgeport, Connecticut this 31st day of August, 2021.

*Julie A. Manning*
Chief United States Bankruptcy Judge
District of Connecticut